**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| KATHIE SHEETS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. _____ |
| | : | |
| LYCOMING COUNTY | : | |
| SHERIFF | : | |
| | : | |
| Defendant. | : | |
| | : | _Electronically Filed_ |
| | : | JURY TRIAL DEMANDED |
| _____ | : | |

**COMPLAINT FOR
DECLARATORY, EQUITABLE, AND MONETARY RELIEF**

Plaintiff, Kathie Sheets (hereinafter "Ms. Sheets"), claims damages upon a cause of action against the above-captioned Defendant, Lycoming County, for sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e _et seq._ and the Pennsylvania Human Relations Act, whereof the following is a statement:

**JURISDICTION**

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as a case arising under the laws of the United States. Jurisdiction is invoked

pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* which provides for original jurisdiction of Ms. Sheets' claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

2.   On or about May 1, 2013, Ms. Sheets filed a complaint with the United States Equal Employment Opportunity Commission, Charge Number 530-2014-03248, which was dually filed with the Pennsylvania Human Relations Commission.

3.   On or after July 13, 2015, Ms. Sheets received her Notice of Right to Sue letter from the United States Equal Employment Opportunity Commission.

4.   Therefore, Ms. Sheets has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court.

## VENUE

5.   Paragraphs 1 through 4 are incorporated herein by reference as though set forth in full.

6.   The actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant who resides within its jurisdictional limits.

7.   Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 1391(c) because one or more defendants can be found in the

Middle District of Pennsylvania and events or omissions giving rise to Plaintiff's claims have occurred in the Middle District of Pennsylvania.

## PARTIES

8. Paragraphs 1 through 7 are incorporated herein by reference as though set forth in full.

9. Plaintiff, Kathie Sheets, is a member of a protected class (sex – female), and was employed as a Deputy Sheriff with the Defendant Lycoming County. Ms. Sheets resides in Jersey Shore, Pennsylvania.

10. Defendant Lycoming County is a Pennsylvania municipality. At all times relevant hereto, Defendant is engaged in commerce throughout the United States, employs in excess of 15 employees, is an employer pursuant to Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act, is liable for Plaintiff's damages, and is responsible for the acts of its supervisory employees.

## FACTUAL ALLEGATIONS

11. Paragraphs 1 through 10 are incorporated herein by reference as though set forth in full.

12. Plaintiff, Kathie Sheets, is a member of a protected class (sex – female).

13. Ms. Sheets is forty-four years old and a single mother of an adult son.

14. Ms. Sheets has over 11 years of experience in law enforcement.

15.   In May of 2006, Charles Brewer, Sheriff of Lycoming County, posted a Job Opening for a Deputy Sheriff position with Lycoming County Pennsylvania.

16.   Ms. Sheets applied for the Deputy Sheriff position and was hired effective July 24, 2006.

17.   Ms. Sheets' starting salary was $14.47 per hour, for 37.5 hours per week, plus benefits.

18.   Prior to accepting the Deputy Sheriff position with Lycoming County, Ms. Sheets had been a Deputy Sheriff with Clinton County, Pennsylvania.

19.   At the time of her hire and throughout the majority of Ms. Sheets' employment with Lycoming County, Ms. Sheets was the only female Deputy Sheriff.

20.   The rest of the 12 Deputy Sheriffs employed with Lycoming County Sheriff's Department were male.

21.   The Sheriff who hired Ms. Sheets was replaced by Sheriff R. Mark Lusk (sex – Male).

22.   Sheriff Lusk was responsible for supervising Ms. Sheets, had the ability to control Ms. Sheets' salary, rate of pay, hours of employment, discipline, job duties and assignments, and other terms, conditions, and privileges of Ms. Sheets' employment.

23.   As the only female deputy, Ms. Sheets was often subjected to discriminatory remarks and differential treatment because of her sex (female).

24.   For instance, Ms. Sheets' 2010 Performance Evaluation for the rating period October 1, 2009 to September 30, 2010 which was reviewed Sheriff Mark Lusk (sex – male), includes the following comment section:

> Kathie.  Does a good job as the only female deputy.  Works well with all the male Deputies.  Does what I ask of her.  Works hard and in a timely matter on her extra assignments.  Willing to help and work extra when needed.  Adds a ray of happiness to our office.  Very pleased she is our Female Deputy.  Sometimes she gets to [sic] involved with clients only because she wants to be helpful and caring. Does our official Phil and Little League, Fair schedules.  Works very hard on these.  A joy to work with.

25.   Despite being the only female in a male dominated environment, Ms. Sheets performed her position as Deputy Sheriff, successfully.

26.   Indeed, she was awarded pay raises for her job performance, was rated as an "Expert" in firearms, and received numerous awards in her position as Deputy Sheriff.

27.   In 2012, Ms. Sheets used FMLA leave to care for herself after having a medically required hysterectomy.

28. Upon her return to work, Ms. Sheets requested light duty because of her restrictions associated with recovery from surgery.

29. After taking FMLA leave and returning to work with restrictions, Ms. Sheets was given her first written warning by the Chief Deputy, Steve Hall.

30. According to the warning, the Sheriff alleged that Ms. Sheets' failed to have her radio charged.

31. Ms. Sheets disputed the warning, in writing, and complained that she was being subjected to discriminatory treatment because of her sex.

32. Ms. Sheets' written complaint was sent to, and received by, Sheriff R. Mark Lusk, Chief Steven Hall, and the Office Manager.

33. Ms. Sheets provided specific examples of male Deputy Sheriffs not being given discipline for violations of policy that were more serious than Ms. Sheets' allegedly having to leave her post to get another battery for her walkie talkie.

34. Some of the examples of males being treated more favorably included:

   a. A male deputy forgetting his gun at home and being permitted to leave work to retrieve it without receiving any discipline;

   b. A male deputy forgetting his keys at home and being permitted to leave work to retrieve his keys at home without receiving any discipline;

    c. A male deputy forgetting his radio and having to borrow Ms. Sheets' radio without receiving any discipline;

    d. A male deputy receiving negative comments about his job performance with the Sheriff's Department published in the local newspaper without receiving any discipline;

    e. A male deputy forgetting important paperwork during a three hour trip to a State Mental Hospital which did not result in discipline.

    f. A male deputy being issued uniforms and equipment, without being sworn into office, which was then used by a relative who took the male deputy's taser and shot a wall. The male deputy was not issued discipline.

35. Nothing was done to correct the discriminatory warning letter given to Ms. Sheets or to investigate or correct the discriminatory environment.

36. Instead, the Sheriff, R. Mark Lusk, took steps to terminate Ms. Sheets' employment after she complained about the sexist treatment she was receiving.

37. Sheriff Lusk ordered a Chief Deputy to send Ms. Sheets home because her hair was not in a pony tail.

38. Ms. Sheets has consistently worn her hair down, in a professional, well-styled manner, and no one ever complained about her grooming.

39.   No other males were told to go home because of their hairstyles.

40.   The Chief Deputy who was ordered to tell Ms. Sheets to go home by Sheriff Lusk told him that Ms. Sheets' hair was professional, that he was not going to ask her to put it up, and he would resign from his position.

41.   The Sheriff then alleged Ms. Sheets was sleeping on the job in August 2013 and scrutinized her cell phone usage.

42.   All deputies were permitted to use their cell phones while at work, but only Ms. Sheets was scrutinized.

43.   Additionally, knowing that he wanted to fire Ms. Sheets, the Sheriff hired a second female Deputy in the Fall of 2013 to replace Ms. Sheets (this female Deputy has since resigned).

44.   As another example of the disparate treatment given to Ms. Sheets because of her sex, in her personal time, Ms. Sheets had been dating an individual who owned a local restaurant; Ms. Sheets sometimes assisted in the running of the restaurant on her off-work hours.

45.   When this individual was arrested for a DUI and released without bail, Ms. Sheets followed County policies and protocol in communicating with him.

46.   The contact included visiting him in jail, depositing money into his prison account for personal items, obtaining supplies, giving him a brief hug, and communicating with him regarding personal and business matters.

47.   Prior to communicating with her boyfriend, Ms. Sheets obtained permission from her Chief.

48.   Males in Ms. Sheets' workplace told her she "step away from being involved" with her boyfriend.

49.   In January 2014, Ms. Sheets again complained in writing about the disparate treatment being given to her, when the majority of male Deputies and employees had relatives and friends housed in the County prison.

50.   Other employees were permitted to have visitation with their loved ones who were incarcerated.

51.   Ms. Sheets' actions did not violate County policy; indeed, the majority of the Deputies had hugged inmates, been physically close to them, and patted them on the back while in uniform and with their weapons.

52.   Many male deputies have consoled inmates at doctor's appointments, hospital runs, in transport, or in court proceedings, yet none were investigated, disciplined, or fired as Ms. Sheets was.

53.   As an example of the Sheriff's Department allowing contact with relatives or loved ones include that Ms. Sheets' niece was incarcerated on $75,000 bail for three felonies and Ms. Sheets was told to go by herself to transport her niece to the Prothonotary's office to sign bail.

54.   Ms. Sheets' niece was a higher security risk than her boyfriend.

55.   At that time in January 2014, Sheriff Lusk placed Ms. Sheets "under investigation," yet would not tell her what he was allegedly "investigating" her for.

56.   No other male deputies were placed "under investigation" by the Sheriff.

57.   Furthermore, if there were an issue to be investigated, it was standard procedure for an outside individual or agency to investigate, not the Sheriff.

58.   Sheriff Lusk then informed Ms. Sheets that he was removing her cell phone, her assignment area, and her vehicle.

59.   After Ms. Sheets complained, on January 30, 2014, the Sheriff, R. Mark Lusk, told Ms. Sheets she was using the bathroom too much.

60.   The Sheriff told Ms. Sheets that she needed to go to her doctor to find out why she was using the bathroom "too much" while at work.

61.   Ms. Sheets did as she was ordered and went to her physician in February 2014.

62.   Ms. Sheets' physician explained that her need to urinate at work throughout could be due to the effects of the surgery, Ms. Sheets' sex (female), and her age.

63.   No other male deputies were scrutinized for their need to use the bathroom at work, let alone being required to go to their doctor and submit medical documentation about having to urinate.

64.    The Sheriff specifically informed Ms. Sheets that she was not permitted to discuss the "investigation" against her with anyone, including the Human Resources Office.

65.    Therefore, Sheriff Lusk targeted Ms. Sheets and treated her differently because of her sex.

66.    Ms. Sheets' employment was terminated on March 20, 2014 for "displeasing" the Sheriff.

67.    Ms. Sheets attended an Exit Interview on March 31, 2014.

68.    Ms. Sheets requested to review her personnel file.

69.    In her file were no records of discipline, any investigation, or warnings.

70.    During the Exit Interview with Human Resources in Lycoming County, Ms. Sheets specifically asked if there were any other reason given for her termination other than she had "displeased" the Sheriff.

71.    Human Resources responded that there was no reason given for her termination of employment.

72.    After being fired from her job with Defendant Lycoming County Sheriff, Ms. Sheets filed for unemployment compensation benefits.

73.    She was awarded unemployment compensation benefits with a finding that she did not engage in willful misconduct.

74.   Since being terminated, Ms. Sheets has applied for numerous positions, including law enforcement positions, listing her position with Lycoming County Sheriff and providing references from the Sheriff's Department.

75.   It is believed that Ms. Sheets' professional reputation has been unfairly tarnished by the Lycoming County Sheriff.

76.   Despite being qualified for the positions, Ms. Sheets has been unable to secure comparable employment like her position as a Deputy Sheriff; she has lost her income, benefits, and retirement.

77.   Defendant Lycoming County Sheriff's actions against Ms. Sheets were intentional, willful, and malicious, entitling her to punitive damages.

78.   As a result of the Defendant's sex discrimination, Ms. Sheets has suffered economic losses, including loss of compensation and benefits, compensatory damages, consequential damages, and incurred expenses for attorneys' fees and costs.

## COUNT I

### *Sex Discrimination*
### *in Violation of Title VII of the Civil Rights Act,*
### *42 U.S.C. §2000e et seq.*

79.   Paragraphs 1 through 78 are incorporated herein by reference as though set forth in full.

80.     Defendant Lycoming County Sheriff violated Title VII of the Civil Rights Act by discriminating against Ms. Sheets because of her sex (female).

81.     Throughout the majority of her employment, Ms. Sheets was the only female Deputy Sheriff employed with the Defendant Lycoming County as more fully outlined herein.

82.     Ms. Sheets was subject to disparate treatment because of her sex including being made subject to sexist remarks, being given unwarranted write-ups, being placed under "investigation", and being treated differently than her male counterparts, and terminated from her position, as more fully outlined herein.

83.     Defendant's reason for terminating Ms. Sheets' employment – because she allegedly "displeased" him – is a pretext for discrimination.

84.     Other, male Deputies have violated County policy and were not terminated as Ms. Sheets was.

85.     One example includes a male Sergeant, Matt Kula, who was sexually harassing a female employee and was not fired as Ms. Sheets was.

86.     Other male Deputies were not able to perform their positions because of health conditions, including not being able to wear the uniform, not being able to sit in a car or transport inmates, yet were not investigated, disciplined, or fired as Ms. Sheets was.

87. Therefore, Defendant Lycoming County discriminated against Ms. Sheets in violation of Title VII of the Civil Rights Act.

88. Defendant engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Sheets' statutory civil rights protected by federal and state law.

89. As a direct and proximate result of Defendant's actions and omissions, Ms. Sheets has suffered and will continue to suffer loss of employment, lost wages, lost bonuses, damage to her career and earning capacity, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

90. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages.

## COUNT II

***Sex Discrimination***
***in Violation of the Pennsylvania Human Relations Act,***
***43 Pa.C.S.A. §951 et seq.***

91. Paragraphs 1 through 90 are incorporated herein by reference as though set forth in full.

92.   Defendant Lycoming County violated the Pennsylvania Human Relations Act by discriminating against Ms. Sheets because of her sex (female).

93.   Ms. Sheets was the only female salesperson employed with the Defendant, Lycoming County Sheriff as more fully outlined herein.

94.   Ms. Sheets was subject to disparate treatment because of her sex, including being paid significantly less than her male counterparts in salary and bonus, being demoted from her position, being subject to sexist comments, and being fired from her position, as more fully outlined herein.

95.   Therefore, Defendant Lycoming County discriminated against Ms. Sheets because of her sex in violation of the PHRA.

96.   Defendant Lycoming County engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Sheets' statutory civil rights protected by federal and state law.

97.   As a direct and proximate result of Defendant's actions and omissions, Ms. Sheets has suffered and will continue to suffer loss of employment, lost wages, lost bonuses, damage to her career and earning capacity, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Kathie Sheets, respectfully requests that this Court enter judgment in her favor and against the Defendant Lycoming County Sheriff and direct the following relief:

1.    For a judgment declaring Defendant violated Title VII of the Civil Rights Act band its state counterparts;

2.    For a money judgment representing damages, including lost wages and benefits, future lost wages and front pay, liquidated damages, punitive damages, and all other sums of money, including retirement benefits and other employment benefits, to the extent available, together with interest thereon for the Defendant's willful violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act;

3.    For a money judgment representing prejudgment interest;

4.    For an Order directing Defendant to restore Ms. Sheets to her position and to make her whole;

5.    That the Court retain jurisdiction over this action until the Defendant has fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

6.    For the costs of suit, including an award of reasonable attorneys' fees;

7.     Fine Defendant for its violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act;

8.     For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

RESPECTFULLY SUBMITTED

KATHIE SHEETS

BY AND THROUGH HER ATTORNEYS

/s/ Lisa Matukaitis

_____

Lisa Matukaitis, Esq.
PA Bar ID: #202467
Matukaitis Law LLC
104 STATE STREET
HARRISBURG, PA  17101
Ph. 717.412.7759
Fax 717.412.7764
lm@matlawllc.com
www.matlawllc.com

Dated:  October 9, 2015